UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KENNA MYLES, as Personal Representative of
the Estate of ANTHONY SPENCER, JR., and
on behalf of survivors, Kenna Myles, and Anthony
Spencer, Sr.,

      Plaintiff,

                                    Case No.: 4:21-cv-00087-AW-MAF

v.

FLORIDA DEPARTMENT OF CORRECTIONS,
MARK INCH, in his official capacity as Secretary,
TONY BARFIELD and JOHN DOES 1-5, individually
and CENTURION OF FLORIDA, LLC,
a health services Corporation

      Defendants.
_____/

## **Amended Complaint and Demand for Jury Trial**

Plaintiff, KENNA MYLES, as Personal Representative of the ESTATE OF ANTHONY SPENCER, JR., and on behalf of survivors, by and through his undersigned counsel hereby sues the Defendants, FLORIDA DEPARTMENT OF CORRECTIONS, MARK INCH, in his official capacity as Secretary, TONY BARFIELD, in his individual capacity, JOHN DOES 1-5, and CENTURION OF FLORIDA, LLC, and alleges:

## **Jurisdiction and Venue**

1. This is an action for damages above the jurisdiction requirements of this Court.

2. This Court has jurisdiction over the federal law claims raised pursuant to Article V, Section 5(b) of the Florida Constitution.

3. Venue is proper in this Court as one or more defendants are found in this county.

4. All conditions precedent to the filing of this action have either been performed or waived, including notice to the Defendants as required under § 768.28, Florida Statutes.

## **Parties**

5. Plaintiff, Kenna Myles, sues as Personal Representative of the Estate of Anthony Spencer, Jr., an inmate in the custody of the Florida Department of Corrections housed at Apalachee Correctional Institution East Unit located in Sneads Florida, a correctional institution operated by the Florida Department of Corrections, on behalf of the Estate and Survivors Kenna Myles, mother, and Anthony Spencer, Sr., father, of the Decedent.

6. On or about November 25, 2020, Plaintiff, Kenna Myles was appointed as the Personal Representative of the Estate.

7. At all times material hereto, Defendant Florida Department of Corrections has been a subdivision of the State of Florida under §768.28, Florida Statutes which governs state prisons in Florida and is headquartered in Tallahassee, Florida.

8. At all times material to this action, Defendant MARK INCH is currently Secretary of the Department of Corrections, sued in his official capacity.

9. Upon information and belief, at all times material to this action the Defendant TONY BARFIELD was Warden of Apalachee Correctional Institution. He is sued in his individual capacity. All of Defendant Barfield's actions or omissions were taken under color of state law.

10. At all times material to this action, Defendant CENTURION OF FLORIDA, LLC., ("Centurion") was a health services corporation contracting with the Florida Department of Corrections to provide comprehensive medical services to inmates housed at Apalachee Correctional Institution.

11. At all times material to this action, JOHN DOES 1-5 were individual persons who were agents or employees of the Florida Department of Corrections, who committed acts that violated the legal rights of Plaintiff's decedent, contributing to his suffering and/or death.

### Florida Department of Corrections

12. At all times material to this action, the state of Florida ran the Department of Corrections (DOC) as the prison system for the State.

13. At all times material to this action, one of the prisons the Florida Department of Corrections ran was Apalachee Correctional Institution.

14. At all times material to this action, and for years prior to the date of the subject incident,  FDOC, including its employees were under investigation for inmate-on-staff violence, prisoner-on-prisoner violence and inmate possession of contraband leading to hundreds inmate deaths.

15. At all times material to this action, FDOC knew that the increase in inmate-on-staff violence, prisoner-on-prisoner violence and inmate possession of contraband leading to hundreds inmate deaths was the result of inadequate supervision and understaffing.

16. At all times material to this action, FDOC was investigated for failing to have or implement policies designed to protect the life and safety of inmates.

17. At all times material to this action, FDOC had a policy and practice of intentionally showing a callous disregard for the life and safety of inmates under its supervision.

18. At all times material to this action, FDOC had a policy and practice of not accurately reporting inmate deaths and/or sabotaging investigations to hide the true extent of the problems facing FDOC.

19. An FDOC audit in 2015 found the agency was "chronically understaffed," and said addressing the problem would require "a significant commitment of attention and resources and the fortitude to make tough decisions."

20. Florida's legislature sanctioned a study that found the FDOC was in need of 734 more guards to adequately staff state prisons; rather than fully address the issue, though, lawmakers funded only 215 of the vacancies.

21. Auditors with the National Institute of Corrections also found the FDOC in violation of its own requirement to declare a "staffing emergency" when vacancies become so numerous, they threaten safe operations.

## <u>Common Allegations of Fact</u>

12. At all times material to this action, Anthony Spencer, Jr. was an adult citizen of the United States of America residing in Sneads, Florida, entitled to exercise all of the rights and privileges provided by the Constitutions of the State of Florida and the United States of America.

13. On or about September 12, 2018 Decedent Anthony Spencer, Jr. was incarcerated at Apalachee Correctional Institution in Sneads, Florida awaiting his release from prison in 2023.

14. Mr. Spencer was housed in a dormitory with other prisoners.

15. Apalachee Correctional Institution has been a leader in forms of inmate-on-inmate assault.

16. Upon information and belief, Mr. Spencer was walking the hall of a dormitory, when at some point, he was cornered by multiple inmates, brutally attacked by the inmates and was fatally injured as a result of stab wounds to the chest.

17. On or about September 12, 2018, Decedent, Anthony Spencer, Jr., was brutally attacked by another inmate due to the correctional facility being understaffed and as a result of the lack of policies and procedures and security in place to protect the inmates.

18. Upon information and belief, Decedent Anthony Spencer, Jr., was attacked with a weapon, what many believe to have been a shank, at approximately 10:59 a.m.

19. Upon information and belief, the assistant warden, the warden and other correctional officers did not notify medical staff or attempt to assist Mr. Spencer.

20. Upon information and belief, at least thirty minutes had passed before medical staff attempted to acknowledge the life-threatening injuries of Mr. Spencer.

21. Upon information and belief, Mr. Spencer's life could have been saved, but medical staff to not make any attempts until long after being notified by the FDOC staff members.

22. Upon information and belief, Mr. Spencer was pronounced nearly three hours after the subject incident occurred.

23. Mr. Spencer's attackers would not have been able to fatally injure Mr. Spencer except for constitutional violations by prison officials, including medical officials.

24. At all times material to this action, Apalachee Correctional Institution East Unit housed over 1,100 adult male inmates.

25. At all times material to this action, the subject dorm wing where the incident took place was situated such that inmates cannot be properly monitored from the nearest station.

26. Upon information and belief, the physical set up makes it more important to properly categorize and/or organize inmates who are deemed dangerous to keep them separate from other inmates.

27. Upon information and belief, everyone, including the warden and correctional officers, knew which inmates were dangerous and posed a life-threatening risk to other inmates.

28. Upon information and belief, everyone, including the warden and correctional officers, knew

29. Upon information and belief, the warden and correctional officers knew that the Deceased was going to be physically attacked and killed.

30. Upon information and belief, FDOC staff and Centurion staff did not call 911 until it was too late

31. Upon information and belief, when the incident occurred, other inmates screamed and were banging and making attempts to summons help for Mr. Spencer.

32. Despite the banging and screaming, no guard or officer came to the assistance of Mr. Spencer form what is believed to be at least 30 minutes.

33. When someone finally arrived, the medical staff failed and/or refused to provide any emergency medical assistance to Mr. Spencer despite finding him on the floor unresponsive and in obvious distress.

34. Upon information and belief, Mr. Spencer was life in obvious distress for more than 30 additional minutes before more medical staff arrived to the scene.

35. It was obvious Mr. Spencer was in immediate need of emergency care and the medical staff failed or refused to provide any emergency medical treatment to Mr. Spencer.

36. Video evidence supports the lack of responsiveness from the medical staff showing that once the staff arrived at the scene, the staff did not direct their

attention Decedent Mr. Spencer and although it was clear to any lay person the emergency medical attention was needed.

37. At all times material to this action, prison employees lacked training in safety and security protocols.  Additionally, security checks were not timely performed.

38. At all times material, the conditions of the time of Mr. Spencer's fatal injury were out of compliance with written policies and training.

39. Upon information and belief, officers did not come to Mr. Spencer's aid in a timely manner although they were aware that he was suffering from a serious medical condition.

40. Upon information and belief, when medical staff were notified of the serious condition of Mr. Spencer and they did not respond in a timely manner.

41. Upon information and belief, medical staff failed to respond on an emergency basis.

42. Upon information and belief, lifesaving protocols were not initiated in a timely manner by the medical staff.

43. Upon information and belief, there was a lack of responsiveness from the medical staff to assist with the treatment of Decedent after the attack and stabbing.

44. At all times material to this action, Apalachee Correctional Institution was seriously understaffed.

45. The Florida Department of Corrections is the third largest state prison system in the country, with a current budget of $2.4 billion.

46. Inmate housing and security decisions are supposed to be made by FDOC's who held supervisory roles, as well as security and classification officers.

47. Upon information and belief, it is believed that discovery will reveal that during the relevant period of time, all Defendants knew that FDOC did not have a sufficient inmate classification policy; they did no have a sufficient safety and protection policy; they did not have sufficient security checks; and they did not have sufficient security training.

48. Correctional institutions are divided into seven levels of security, ranging from minimum custody facilities to maximum custody facilities.

49. Inmate homicides have been a systemic issue according to statistics compiled by the Florida Department of Corrections. From the period of 2011 to 2014, there have been a total of 32 inmate deaths that were determined to be homicides by the Medical Examiner.

50. Pursuant to the FDOC Inmate Mortality Rate, there were 15 deaths that occurred prior to the death of Anthony Spencer, Jr. that occurred at Apalachee Correctional Institution (East Unit) from 2015 to 2018.

51. The facts of these deaths were such that the Florida Department of Corrections, through its employees, agents, and policymakers and supervisors knew that use

of inmate violence, inmate harassment, and/or excessive violence against inmates was occurring and correctional officers, staff and supervisors were culpable in inmate deaths and other violations of the laws and constitution of the United States.

52. Thus, the Florida Department of Corrections knew that there was a serious need for more staff, better training of correctional officers, and better policies and procedures regarding the safety and security of inmates at Apalachee Correctional Institution and at other correctional facilities in the state of Florida.

53. The Florida Department of Corrections knew that there was a serious need for more security and protection of inmates, more security checks, and better policies and procedures regarding the safety and security of inmates at Apalachee Correctional Institution and at other correctional facilities in the state of Florida.

54. Had FDOC implemented appropriate policies and procedures regarding the protection, security checks, and safety and security of inmates, Decedent, Anthony Spencer's life could have been saved.

55. Had there been a policy for appropriate medical kits, equipment and devices to be placed in each dorm, Decedent, Anthony Spencer's life could have been saved.

56. Defendants cooperated in a policy to short-staff corrections security positions such that there was not a full, adequate and or competent staff in the prison dormitories, including the Apalachee Correctional Facility on the day of the incident.

57. Upon information and belief, Centurion ignored the treatment of the Decedent.

58. Decedent had multiple visible contusions and life-threatening wounds; Centurion should have immediately called 921 to advise of a life-threatening medical emergency and it did not.

59. Defendants, FDOC and Centurion cooperated in a policy to short-staff medical personnel positions such that there was not a fully, adequate and or competent medical staff at the prison facilities, including Apalachee Correctional Institution on the day of the incident.

60. Short-staffing positions was a method by which the Department created pools of money which they could use for other purposes by converting payroll funds.

61. Because the Department cut so many correctional officers, security systems at Apalachee Correctional Institution were dangerously low and instances of violence increased.

62. Prior to the subject incident, the Defendants allowed inmates to travel freely throughout the correctional facility when in fact, the inmates were not authorized to do so.

63. The Defendants knew about the unauthorized visits of inmates and did nothing about it.

64. Defendant FDOC cooperated in a policy to permit, facilitate, ratify, condone, inmate-on-inmate assaults and batteries and were deliberately indifferent to known risks of the life, health and safety of the inmates; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers and investigators.

65. Defendant Barfield cooperated in a policy to permit, facilitate, ratify, condone, inmate-on-inmate assaults and batteries and were deliberately indifferent to known risks of the life, health and safety of the inmates; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers and investigators.

66. Defendant Inch cooperated in a policy to permit, facilitate, ratify, condone, inmate-on-inmate assaults and batteries and were deliberately indifferent to known risks of the life, health and safety of the inmates; therefore, he failed to

discourage constitutional violations perpetrated by its correctional officers and investigators.

67. Prior to the incident complained of, the Defendant FDOC cooperated in a policy to permit, facilitate, ratify, condone the concealing or covering up suspicious circumstances surrounding inmate violence and deaths; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers and investigators.

68. Prior to the incident complained of, the Defendant Barfield cooperated in a policy to permit, facilitate, ratify, condone the concealing or covering up suspicious circumstances surrounding inmate violence and deaths; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

69. Prior to the incident complained of, the Defendant Inch cooperated in a policy to permit, facilitate, ratify, condone the concealing or covering up suspicious circumstances surrounding inmate violence and deaths; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

70. Defendant FDOC cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of failing to conduct effective investigations and/or conduct investigations in good faith in regard to inmate deaths; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers.

71. Defendant Barfield cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of failing to conduct effective investigations and/or conduct investigations in good faith in regard to inmate deaths; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

72. Defendant Inch cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of failing to conduct effective investigations and/or conduct investigations in good faith in regard to inmate deaths; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

73. Defendant FDOC cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of destroying evidence or failing to preserve evidence in regard to inmate deaths; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers.

74. Defendant Barfield cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of destroying evidence or failing to preserve evidence in regard to inmate deaths; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

75. Defendant Inch cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of destroying evidence or failing to preserve evidence in

regard to inmate deaths; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

76. Defendant FDOC cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of failing to supervise inmates despite being on or having notice of imminent violence ensuing against inmates; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers.

77. Defendant Barfield cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of failing to supervise inmates despite being on or having notice of imminent violence ensuing against inmates; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

78. Defendant Inch cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of failing to supervise inmates despite being on or having notice of imminent violence ensuing against inmates; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

79. Defendant FDOC cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of intentionally declining to classify or separate inmates who posed a serious threat to the lives of other inmates when on notice of the serious threats and the violence which could ensue; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers.

80. Defendant Barfield cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of intentionally declining to classify or separate inmates who posed a serious threat to the lives of other inmates when on notice of the serious threats and the violence which could ensue; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

81. Defendant Inch cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of intentionally declining to classify or separate inmates who posed a serious threat to the lives of other inmates when on notice of the serious threats and the violence which could ensue; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

82. Defendant FDOC cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of not adequately training correctional officers to supervise, care for and control inmates considering the increase in violent attacks in the prisons and at Apalachee Correctional Institution; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers.

83. Defendant Barfield cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of not adequately training correctional officers to supervise, care for and control inmates considering the increase in violent attacks in the prisons and at Apalachee Correctional Institution. Defendant Barfield was

responsible for ensuring that the correctional officers and other prison staff were adequately trained to supervise, care for and control the inmates and he did not; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

84. Defendant Inch cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of not adequately training correctional officers to supervise, care for and control inmates considering the increase in violent attacks in the prisons and at Apalachee Correctional Institution. Defendant Inch was responsible for ensuring that the correctional officers and other prison staff were adequately trained to supervise, care for and control the inmates and he did not; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

85. Defendant, FDOC maintained a policy and/or custom of ignoring, disregarding or turning a blind eye to the physical threats, hazards, dangers and actual acts of violence occurring between inmates when it was well aware; therefore, it failed to discourage constitutional violations perpetrated by its correctional officers.

86. Defendant, Inch maintained a policy and/or custom of ignoring, disregarding or turning a blind eye to the physical threats, hazards, dangers and actual acts of

violence occurring between inmates when it was well aware; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

87. Defendant, Barfield maintained a policy and/or custom of ignoring, disregarding or turning a blind eye to the physical threats, hazards, dangers and actual acts of violence occurring between inmates when it was well aware; therefore, he failed to discourage constitutional violations perpetrated by its correctional officers.

88. Florida correctional officers are responsible for the supervision, care, custody, and control of all inmates in Florida correctional institutions and facilities.

89. Correctional officers' duties and responsibilities include, but are not limited to, supervising inmates in housing units and those segregated for administrative or punitive measures, maintaining a periodic patrol either inside or outside the institution to ensure the security and integrity of the institution, maintaining control and discipline, initiating and participating in search of inmate recreation areas, work areas, and housing units to prevent the introduction of contraband items, and preventing the introduction of contraband into the institution. They are also responsible for carrying out inmate designations to prevent placing inmates in obvious dangers.

90. The FDOC correctional officers knew that inmates are classified based upon

danger to others, among other things.

91. They further knew that once classified as a "PM" they had to take precautions to protect other inmates from dangers presented by the inmate with such a designation.

92. Failing to designate the inmates properly, particularly, the inmates who attacked Mr. Spencer, was deliberately indifferent to the health and safety of Mr. Spencer and resulted in his needless stabbing and death at the hands of Brown.

93. Defendants Barfield and Inch , knew that the correctional officers failed to adopt, implement or enforce an inmate classification policy or procedure that identified inmates as predator or non-predator or sufficiently identified dangerous inmates that were risk to house with or be around other inmates.

94. Captain John Doe was the officer in charge during the shift when Mr. Spencer suffered his fatal injury.

95. Lieut. John Doe was a shift Lieutenant who had responsibility for security in the dormitory where Mr. Spencer was fatally injured.

96. Sergeant John Doe was the dorm Sergeant John Doe who was careless and reckless in performance of his security duties.

97. Officers John Doe 1 (One) and 2 (Two) were officers responsible for conducting security checks and other security measures that were ignored prior to and subsequent to Mr. Spencer's fatal injury.

98. Upon information and belief, Centurion was subjected to many malpractice claims as a result of the lack of care and failure to adequately treat inmates.

99. The circumstances involving the death of Anthony Spencer, Jr. violated the Eighth Amendment.

100. The Defendants each acted to violate Anthony Spencer's constitutional rights or failed to intervene to prevent the violation of his rights, though able.

101. Defendants caused the Decedent to suffer severe physical and mental injuries and ultimately, death.

102. Mr. Spencer's life could have been saved if the correctional officers, medical staff and supervisors had acted reasonably in response to the known serious medical condition that cost Mr. Spencer his life.

## CAUSES OF ACTION

### Count I
### 42 U.S.C. § 1983: Failure to Protect
### (Defendant Correctional Officers, John Does 1-5)

103.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

104.   Plaintiff is entitled to relief against Defendants, pursuant to 42 U.S.C. §1983 and the Eighth Amendment.

105.   The Eighth Amendment protects inmates against infliction of "cruel and unusual punishment."

106.   Defendants, as lieutenants, sergeants, captains and correctional officers at Apalachee Correctional Institution, while acting under color of state law and by virtue of the authority vested in them by the State of Florida or its subdivisions or agencies unlawfully failed to protect Decedent, Anthony Spencer, Jr. from harm in violation of the United States Constitution.

107.   The Defendants failed to protect the Decedent, Anthony Spencer, Jr. when Defendants:

  a)  Had actual knowledge there was a substantial risk to Decedent, Anthony Spencer, Jr. that he could be harmed by another inmate;

  b)  Knew that inmates from other dorms and units were roaming the correctional facility without authority;

  c)  Knew that inmates from the west unit were routinely entering the east unit (and vice versa) when they should have been prohibited from doing so;

d)  Knew that the correctional institution was understaffed and that safety,
    security and protection of inmates was inadequate;

e)  Knew of the risk considering the fact that they knew about the history of
    the inmate who attacked the Decedent.  The Defendants also knew about
    the history and reputation of the correctional facility, itself, regarding the
    violent attacks and violence of inmates at Apalachee Correctional
    Institution and they deliberately disregarded this risk and failed to take
    reasonable measures to protect Decedent, Anthony Spencer, Jr. in response
    to that risk;

f)  Knew that there was a lack of security checks and protection of inmates
    from violent assaults and attacks and protection from all forms of violence,
    but blatantly disregarded it;

g)  Subjected Anthony Spencer, Jr. to be brutally beaten and stabbed by
    inmates, ultimately causing his untimely death;

108.  Despite the fact that the Defendants knew that inmates, including Mr.
Spencer, faced a substantial risk of serious harm (even death), the Defendants
disregarded the risk and failed to take reasonable measures to abate or prevent it.

109.  The reckless or intentional subjecting of Mr. Spencer to physical assault, and
death, is a sufficiently serious deprivation within the zone of Eighth Amendment
protection.

110.   The Defendants were deliberately indifferent to Mr. Spencer's health and safety.

111.   The Defendants had actual knowledge of, appreciated, and ignored, the risks and dangers to Mr. Spencer's health and safety.

112.   Despite having an appreciable opportunity to do so, the Defendants took no action to abate the risk and danger to Mr. Spencer's health and safety.

113.   The Defendants allowed inmates to roam freely throughout correctional facility and enter sections of the facility in which they were prohibited; this caused a threat to many of the inmates and increased the chances of violence being committed.

114.   The Defendants failed to protect inmates from violent attacks, assaults and death.

115.   As a direct and proximate result of the above-described failure to protect Decedent, Anthony Spencer, Jr., the Decedent sustained brutal and severe physical injuries, resulting in his untimely death.

116.   As a result, Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable costs of such representation, as well as costs.

WHEREFORE, Plaintiff seeks damages as noted below.

### Count II

## 42 U.S.C. § 1983: Custom or Policy of Failure to Protect
## (Tony Barfield and Mark Inch)

117.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

118.   Plaintiff is entitled to relief against Defendants Tony Barfield and in his individual capacity and Mark Inch in his official capacity, pursuant to 42 U.S.C. §1983 and the Eighth Amendment of the United States Constitution.

119.   Prior to September 12, 2018 Defendants, developed, enforced, maintained ratified and/or condoned policies or customs which resulted in deliberate indifference to constitutional rights of Apalachee Correctional Institution inmates, which ultimately caused the violation of Decedent, Mr. Spencer's constitutional rights.

120.   Defendant maintained a policy and/or custom of ignoring and disregarding the physical threats, intimidations and actual acts of violence occurring between inmates, inadequately and improperly investigating complaints of correctional officer and inmate misconduct were allowed, tolerated, and not reprimanded by Defendants. Thus, Defendants failed to discourage constitutional violations perpetrated by its correctional officers and ratified improper conduct and failed to protect inmates, which facilitated the future acts of unlawful violence substantially certain to occur.

121.   Defendants have a history of failing to supervise inmates and/or implement policies designed to protect the life and safety of inmates.  Defendants also have a history of showing a callous disregard for the life and safety of inmates under its supervision and ratifying Constitutional rights violations by their officers. Defendant also has a history of failing to appropriately discipline inmates, failing to correct officer and inmate misconduct, and failing to properly train or supervise correctional officers; thus, exhibiting deliberate indifference to the constitutional rights of employees and inmates at correctional facilities under the control of the Florida Department of Corrections, specifically, Decedent, Mr. Spencer, whose constitutional rights were violated pursuant to the Eighth Amendment of the United States Constitution, and he was ultimately deprived of his bodily integrity.

122.   Defendants ratified and/or condoned the violations of the Civil Rights Act, 42 U.S.C. §1983, Eighth Amendment of the United States Constitution, or in the alternative the   violations were so common, that it became custom. Furthermore, Defendants knew such violations were occurring, but was deliberately indifferent to doing anything about it.

123.   As a result of the above-mentioned policies and customs, Defendants believed that their wrongful actions would not be subject to proper monitoring by

supervisors, and that misconduct would not be subject to investigation or sanction but would instead be tolerated by Defendants.

124.   The above fact denotes a deliberate indifference on the part of Defendants Tony Barfield and David Maddox, as policy-makers and custom enforcers, to upholding the constitutional rights of inmates at Apalachee Correctional Institution including Decedent, Anthony Spencer, Jr., in particular the right to be free from violent attacks from other inmates, which actually and proximately caused violations of Decedent, Anthony Spencer's constitutional rights guaranteed by the Eighth Amendment to the United States Constitution, in particular fatally injuring Decedent and causing his death, depriving him of his right to bodily integrity.

125.   As a direct, proximate, and foreseeable result of the Constitutional violations and misconduct of Defendant, Tony Barfield and Defendant, David Maddox, actions and/or omissions, Decedent Mr. Anthony Spencer sustained brutal and severe physical injuries resulting in his untimely and death.

126.   As Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable costs of such representation, as well as costs.

WHEREFORE, Plaintiff seeks damages as noted below.

**Count III**
**42 U.S.C. § 1983: Deliberate Indifference (Mark Inch, Tony Barfield, Supervisory Officers)**

127.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

128.   Plaintiff is entitled to relief against Defendants because while acting under color of law, they violated Mr. Spencer's rights under the Eighth Amendment. Defendant by virtue of their responsibilities within the Department of Corrections and as a supervisor was responsible for overseeing the actions of the correctional officers and inmates at Apalachee Correctional Institution.

129.   Defendants had a duty to implement and employ policies and procedures of the Florida Department of Corrections that would ensure the health and safety of inmates as well as employees. Defendant also had a duty to protect Decedent Anthony Spencer, Jr. from injury and death and to protect inmates from avoidable and senseless injuries and death, in addition to providing inmates with constitutionally safe living conditions and access to medical care, including emergency care.

130.   Defendants were charged with the constitutional duty to hire, train, supervise, and discipline, employees and other correctional officers in such fashion to ensure they kept inmates and employees safe and protected at the subject correctional facility. Defendants were also in charge with the duty to train staff to comply with standard policies and procedures in areas such as: correctional officer compliance and safety, inmate compliance and safety, the harassment and assault of inmates, safety and security of inmates, inmate protection including, Anthony Spencer, Jr.

131.   Defendants were well aware of the danger to inmates, including Mr. Anthony Spencer, Jr. when the Defendant Charlotte Correctional Institution Officers repeatedly failed to monitor and supervise inmates in the respective units at Apalachee Correctional Institution. They knew that since the correctional officers repeatedly failed to properly monitor and supervise inmates, it would lead to the harassment, violence against and death of inmates, including Decedent Anthony Spencer, Jr.

132.   Defendants were aware of the facts that gave rise to an inference of a risk of serious harm to Mr. Spencer and Defendants reasonably drew the inference, yet took no action to abate the harm.

133.   Defendants acted with deliberate indifference to a known risk of harm in hiring, training, supervising the correctional officers.

134.   As a direct result of Defendant's deliberate indifference to Mr. Spencer's constitutional rights, he suffered severe physical injuries and death.

135.   As Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable costs of such representation, as well as costs.

WHEREFORE, Plaintiff seeks damages as noted below.

**Count IV**
**42 U.S.C. § 1983: Deliberate Indifference to Serious Medical Needs/Failure to Treat:**
**Centurion of Florida, LLC**

136.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

137.   Defendant Centurion of Florida, LLC., had a duty under the Constitution of the United States of America to medically treat inmates and provide adequate medical care to those inmates, including Decedent Mr. Spencer, in the custody of Apalachee Correctional Institution.

138.   Defendant had a duty under the Eighth Amendment to treat inmates and provide medical treatment and not to be deliberately indifferent to the known serious medical needs of inmates in the custody of Apalachee Correctional Institution.

139.   While incarcerated at Apalachee Correctional Institution, Decedent Anthony Spencer, Jr. suffered from serious medical need to wit, the need for urgent care for the wounds he sustained as a result of the stabbing, the need to urgently be treated by a doctor, and/or the need to be timely transferred to the hospital, in part, more fully above, which, if not properly and timely attended to, would and did leave Decedent with serious injuries and ultimately led to Decedent's tragic and untimely death.

140.   Defendant failed to adequately treat Mr. Spencer. The Defendant was aware of Decedent's medical needs and the need to urgently treat the severe injuries, which would have been obvious to a lay person and which, if not properly and timely attended to, would leave Mr. Spencer with serious injuries or death. Defendant was aware of the need for medical treatment and emergency treatment of inmates, including Decedent Mr. Spencer pursuant to testimony from Apalachee Correctional Institution employees and inmates stating that timely medical care has been an issue at Apalachee Correctional Institution as well as a

lack of readily available medical kits and devices in each dorm in the event of medical emergencies such as the medical emergency in this instance.

141.   Decedent's obvious and severe injuries were known or knowable to Defendant at all times material to this action. Despite their knowledge of the serious risk to Decedent's health, Defendants, intentionally or through deliberate indifference, failed or refused to medically treat or provide Decedent with adequate and timely medical care. Had Defendants ensured that Decedent was properly treated in a timely manner, Mr. Spencer's injuries and death could have been avoided.

142.   As stated more specifically, in part, above, Defendant acted with deliberate indifference as to Decedent's serious medical condition when they failed to treat Decedent and/or provide medical treatment to Mr. Spencer, despite having actual knowledge that Decedent needed medical treatment and attention and/or despite the fact that they should have been aware of this, and Decedent died as a result, as described in part more fully above.

143.   Defendant misused its power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violation of Decedent's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. § 1983.

144. The foregoing actions of Defendant as set forth in part above constituted a deliberate indifference to severe risks to Decedent's life, health and safety.

145. Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights. Defendants also failed to treat Decedent and/or provide Decedent with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Decedent.

146. Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy regarding the response time for inmate medical treatment for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights. Defendants also failed to treat Decedent and/or provide Decedent with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Decedent.

147. Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy regarding the availability of

medical kits and/or devices in dorms in the event of medical emergencies. Defendants also failed to treat Decedent and/or provide Decedent with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Decedent.

148.   As a direct result of Defendant's deliberate indifference to Decedent Mr. Spencer's right to receive medical treatment, he suffered brutal and severe physical injuries and death.

149.   As Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable costs of such representation, as well as costs.

WHEREFORE, Plaintiff seeks damages as noted below.

## Count V
## Wrongful Death under State Law (Florida Department of Corrections)

150.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

151.   In the alternative, Plaintiff is entitled to relief against Defendant Department of Corrections under the Florida Wrongful Death Act.

152.   At all times material hereto, Florida Department of Corrections owed a legal duty to provide non-negligent care and custody to inmates, including Decedent Anthony Spencer, Jr. Additionally, FDOC owed a duty to inmates as well as

correctional officers and other staff and to Decedent Anthony Spencer, Jr., to ensure that FDOC, Apalachee Correctional Institution, Mark Inch, Tony Barfield, and David Maddox its officers, agents and employees would perform their duties in such a way as to avoid placing Decedent Anthony Spencer, Jr. in unreasonable danger of serious injury or death. Furthermore, Defendant FDOC owed a duty to ensure that its agencies would act in a prudent and reasonable manner with regard to the care, health and safety of inmates, including Decedent Anthony Spencer, Jr.

153.   Florida Department of Corrections breached that duty owed to Decedent Anthony Spencer, Jr.  in various ways including but not limited to, the following:

a) It failed to ensure that FDOC, Mark Inch, the Secretary of FDOC, Apalachee Correctional Institution, Tony Barfield and David Maddox had established reasonable and appropriate policies to accomplish the mission of FDOC of providing a continuum of services to meet the needs of those entrusted in their care, creating a safe and professional environment with the outcome of reduced violence and victimization, safer communities and an emphasis on the premium of life;

b) It failed to ensure that FDOC, the Secretary of FDOC, Apalachee Correctional Institution, Tony Barfield and David Maddox had established reasonable and appropriate policies regarding the hiring, retention, discipline and promotion of corrections personnel;

c) It failed to ensure that FDOC, the Secretary of FDOC, Apalachee Correctional Institution, Tony Barfield and David Maddox had established reasonable and appropriate policies regarding the discipline of inmates;

d) It failed to ensure that FDOC, Mark Inch, the Secretary of FDOC, Apalachee Correctional Institution and the Wardens, Tony Barfield and David Maddox, adequately trained, supervised, instructed and/or monitored Apalachee Correctional Institution employees regarding inmate interaction, inmate and corrections officer safety;

e) It failed to implement adequate training, policies and procedures related to supervision, discipline, hiring, screening, of its employees;

f) It failed to ensure that its employees and agents in supervisory roles established reasonable and appropriate policies and procedures governing the manner in which Apalachee Correctional Institution personnel responded to inmates who needed medical treatment, including emergency medical treatment;

g) As a matter of facility design, it failed to ensure that the medical department or infirmary was placed in a reasonable location in an effort to facilitate timely responses to medical care and treatment, including emergencies;

h) It failed to ensure that medical kits and functional medical equipment was available in each of the prison dorms when it knew or should have known that inmates and correctional officers would need medical treatment;

i) It failed to ensure that all FDOC personnel complied with existing policies and procedures, if any, with regard to the use of excessive force against inmates;

j) It failed to take corrective action to prevent FDOC personnel and inmates under its control from exercising poor judgment and from implementing policies and procedure and staffing requirements in response to prior incidents involving inmate on inmate attacks and murders under FDOC's control and supervision.

k) It was careless and negligent in such other ways as may be identified during the course of discovery and/or trial.

154.   Defendant FDOC is legally responsible for the violations of the legal duties of care by its agents and employees, under the doctrine of Respondeat Superior.

155.   Defendant FDOC's negligent acts and omissions constitute proximate causes of the incident which resulted in serious injuries to and the death of Anthony Spencer, Jr..

156.   As a direct and foreseeable result of the negligent, careless and wrongful conduct of Defendant Florida Department of Corrections, Mr. Spencer suffered serious injuries and    death.

157.   Mr. Spencer's survivors are entitled to receive the damages pursuant to the Wrongful Death Act under Florida law.

158.   The Estate of Anthony Spencer, Jr.. has suffered and will continue to suffer damages into the future. As a result, Plaintiff, Kenna Myles, as the Personal Representative of the Estate of Anthony Spencer, Jr. seeks to recover damages, which are allowed under the Wrongful Death Act, Fla. Stat. § 768.16 et seq., and include the following:

> (a) The past and future loss of Decedent's support and services to Kenna Myles, his natural mother, and Anthony Spencer, Sr. his natural father;

> (b) Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value that the parents would have otherwise received during

the Decedent's life had it not been for his untimely, tragic, and wrongful death;

(c) The expense of medical care and funeral arrangements arising from the injury and death of the Decedent, Anthony Spencer, Jr.;

(d) Loss of the Decedent's prospective net accumulations;

(e) Loss of inheritable estate; and

(f) Any and all other damages as specified in F.S. 768.21.

WHEREFORE the Plaintiff hereby sues the Defendant, and demands judgment against the Defendant for all damages recoverable under the laws of Florida and further demands a trial by jury on all issues so triable as of right.

## Count VI
## Alternative: Wrongful Death under State Law (Centurion of Florida, LLC)

159.    Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

160.    In the alternative, Plaintiff is entitled to relief against Defendant Centurion of Florida, LLC under the Florida Wrongful Death Act.

161.    Defendant Centurion of Florida, Inc., owed a legal duty to provide non-negligent medical care and treatment to inmates including Decedent Mr. Spencer. Additionally, Defendant had a duty to ensure that its employees would perform

their duties in such a way as to make sure patients received adequate medical treatment,      as well as emergency medical attention.

162. Defendant Centurion breached these duties with regard to Mr. Spencer in various ways, including but not limited to the following when:

a. It failed to hire and retain only competent and knowledgeable medical staff and ensure that only competent and knowledgeable medical employees and staff were assigned to accepted positions providing medical care to inmates at the state correctional institutions throughout the state of Florida, including Apalachee Correctional Institution;

b. It failed to ensure that only qualified and sufficiently experienced medical staff personnel were assigned to treat and care for Decedent Anthony Spencer, Jr.;

c. It failed to provide adequate training for its medical employees or agents;

d. It failed to appropriately supervise its medical employees or agents as to inmate care;

e. It failed to ensure that its medical employees or agents possessed reasonable knowledge and skill in the treatment and care of head injuries, such as Mr. Spencer's injuries;

f.  It failed to ensure that its employees and agents were familiar with and abided by the State of Florida Department of Corrections' written and unwritten policies, procedures and protocols regarding emergency care and treatment;

g.  It failed to implement and/or enforce appropriate policies and procedures regarding provisions of emergency medical care for inmates;

h.  It failed to implement and/or enforce appropriate policies and procedures regarding when a medical doctor is in the infirmary, and/or when a doctor or medical staff must be called in an emergency situation;

i.  It discouraged the utilization of necessary and appropriate medical care, tests, services;

j.  Its employees failed to be located at a reasonable distance from the dorms where inmates were in need of medical treatment, including emergency medical treatment;

k.  It failed to ensure that medical kits and functional medical equipment was available in each of the prison dorms when it knew or should have known that inmates and correctional officers would need medical treatment;

l.  It failed to ensure that prison dorms were equipped with cardiopulmonary resuscitation (CPR) and automated external defibrillator (AED) device in the event of a medical emergency such the emergency in the instant case;

m. Its employees failed to respond in a timely manner to provide inmates, including Mr. Spencer with medical care, treatment and assistance, including emergency medical care;

n.  Its employees failed to properly treat and provide adequate medical care to Mr. Spencer; and

o.  It was careless and negligent in such other ways as may be identified during the course of discovery and/or trial.

163.  Defendant Centurion of Florida, LLC is legally responsible for the violations of the legal duties of care by its agents and employees under the doctrine of Respondeat Superior.

164.  Defendant Centurion of Florida, LLC's negligent acts and omissions constitute the proximate causes of the incident, which resulted in the death of Anthony Spencer, Jr., which Plaintiff on behalf of the Estate of Anthony Spencer, Jr. are entitled to recover damages under the Florida Wrongful Death Statute.

165.   As a direct and foreseeable result of the negligent, careless and wrongful conduct of Defendant Centurion of Florida, LLC, Mr. Spencer suffered serious injuries and death.

166.   Mr. Spencer's survivors are entitled to receive the damages pursuant to the Wrongful Death Act under Florida law.

167.   The Estate of Anthony Spencer, Jr.. has suffered and will continue to suffer damages into the future. As a result, Plaintiff, Kenna Myles, as the Personal Representative of the Estate of Anthony Spencer, Jr.. seeks to recover damages, which are allowed under the Wrongful Death Act, Fla. Stat. § 768.16 et seq., and include the following:

   (g) The past and future loss of Decedent's support and services to Kenna Myles, his natural mother, and Anthony Spencer, Sr. his natural father;

   (h) Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value that the parents would have otherwise received during the Decedent's life had it not been for his untimely, tragic, and wrongful death;

   (i) The expense of medical care and funeral arrangements arising from the injury and death of the Decedent, Anthony Spencer, Jr.;

(j)  Loss of the Decedent's prospective net accumulations;

(k)  Loss of inheritable estate; and

(l)  Any and all other damages as specified in F.S. 768.21.

WHEREFORE the Plaintiff hereby sues the Defendant and demands judgment against the Defendant for all damages recoverable under the laws of Florida and further demands a trial by jury on all issues so triable as of right.

## Count VII
## <u>Alternative: Direct Negligence under State Law (Survival) (FDOC)</u>

168.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

169.   In the alternative, Plaintiff is entitled to relief against FDOC for negligence resulting in physical injury and emotional distress, but not death, of Plaintiff's decedent pursuant to § 46.021, Florida Statutes.

170.   Defendant Florida Department of Corrections (FDOC) had a duty to provide Decedent with protection, security checks, safe custody and appropriate and timely medical care and assistance.

171.   FDOC knew or should have known Decedent's needs were not being met.

172.   FDOC's refusal to provide care to Decedent was a breach of its duty to provide for Decedent's safety, and directly caused Decedent to suffer unreasonable pain, discomfort,      mental anguish, and suffering.

WHEREFORE, Decedent's Estate is entitled to damages for pre-death suffering.

## Damages (Generally)

173.   At the time of his death, Anthony Spencer, Jr. was 27 years of age. His mother and father with whom he shared bonds of genuine love and affection survive him. By reason of the wrongful acts and omissions of all Defendants, as heretofore alleged, Anthony Spencer, Jr.'s family has been forever deprived of his affection and their familial relationship with Mr. Spencer.

174.   Mr. Spencer experienced excruciating physical pain and mental anguish as the inmate brutally attacked, struck and stabbed Decedent.

175.   Plaintiff is entitled to recover from all Defendants, jointly and severally, all damages pursuant to laws of Florida and the United States Constitution in special recognition of   the remedial purposes of 42 U.S.C. § 1983, the Civil Rights Act of 1871.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests of the Court:

A. To find that Defendants' actions described herein are unlawful and violated rights of Plaintiff's Decedent under Constitutional and Statutory Law;

B. Compensatory damages for Plaintiff's physical injury, pain and suffering and emotional and psychological damages in an amount to be determined;

C. Punitive damages against the individual defendants;

D. Reasonable attorney's fees and costs under 42 U.S.C. § 1988 and other law;

E. Trial by jury on all counts so triable; and

F. That Plaintiff be granted any and all other damages and further relief, as this Court deems just and appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 3, 2021, a true and correct copy of the foregoing was filed with the Clerk of Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Respectfully submitted,

   /s/Amber N. Hall
Amber N. Hall, Esquire
(FBN:0103042)
820 East Park Ave. Building B
Tallahassee, Florida 32301

P: (850) 701-8850
F: (850) 701-8856
E: amber@amberhalllaw.com
E: legal@amberhalllaw.com
E: support@amberhalllaw.com
E: assist@amberhalllaw.com
*Attorney for Plaintiff*